UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

United States of America

      v.                             Criminal No. 2:18-cr-165-JNL

George Royle V

## MEMORANDUM ORDER

Defendant George Royle V has moved to reconsider the court's denial of his motion for judgment of acquittal after a jury convicted him on one count of possession of or access with intent to view child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2256(8)(A). The jury returned the guilty verdict after a three-day trial. Royle moved for judgment of acquittal at the end of the prosecution's case in chief and at the end of his own, arguing that the prosecution had not met its burden of proving beyond a reasonable doubt that Royle (as opposed to another) used the laptop found in his home to access and download the illicit images. See Fed. R. Crim. P. 29. The court denied that motion. United States v. Royle, No. 18-cr-165-JNL, 2020 WL 2617133 (D. Me. May 22, 2020).

Royle now moves for reconsideration, arguing that the court committed errors of fact and law when it denied his Rule 29 motion, and that it misapprehended one of his arguments. But none of Royle's alleged errors of fact warrant reconsideration. The fact that his interpretation of United States v. Pothier, 919 F.3d 143 (1st Cir. 2019), differs from the court's does not constitute an error of law. And though the court may have

misapprehended his argument that certain of the Firefox browser's automated actions constitute another potential "user" under Pothier, that argument does not warrant acquittal.  Royle's motion for reconsideration is accordingly denied.

## I.      Applicable legal standard

"[M]otions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust."  United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009).  "[A] motion for reconsideration should be granted if the court has patently misunderstood a party . . . or has made an error not of reasoning but apprehension."  Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 82 (1st Cir. 2008) (internal quotations omitted).  Such motions, however, "are not to be used as a vehicle for a party to undo its own procedural failures [or] allow a party to advance arguments that could and should have been presented to the district court prior to judgment."  Allen, 573 F.3d at 52 (internal quotations omitted, alteration in original).

## II.     Analysis

Royle seeks reconsideration on three bases.  He argues that the court:
(1) committed errors of fact in relying on certain evidence in denying his Rule 29 motion;
(2) committed errors of law by misinterpreting or misapplying the Court of Appeals's decision in Pothier; and (3) misapprehended his argument that certain automated processes are as likely to have downloaded the illicit images found on the computer as

direct human action.  None of these issues warrant reconsideration, but the court addresses them, briefly, to clarify its prior ruling.[1]

### A.    Alleged errors of fact

The bulk of Royle's alleged errors of fact focus on entries in the LSQuarantine Database.  The prosecution introduced an excerpt from that database and the defendant introduced—and admitted into evidence—the full database during the cross-examination of Special Agent Seth Plumb, the forensic examiner who analyzed the MacBook on which he found illegal images.  Royle also argues that the court committed errors of fact relating to use of the MacBook by his former wife, Anne Hardcastle, and by an unidentified user.  What Royle raises do not, however, constitute errors of fact.  In large part, he merely disagrees with the court's decisions concerning the inferences that a reasonable jury may draw from the evidence presented during the prosecution's case-in-chief.  Such disagreement requires neither reconsideration nor a judgment of acquittal.

### 1.    Mail entries

In its order denying Royle's Rule 29 motion, the court concluded that a reasonable juror could infer Royle's consistent use of the MacBook from, among other things, entries from the Mail program that appear in the LSQuarantine database.  Royle argues that, by doing so, the court erred in two ways.

---

[1] The court recounted the facts of the case in its prior order and does not repeat them here.  See Royle, 2020 WL 2617133 at *2-7.

Royle first contends that the court erred by relying on the Mail entries in the LSQuarantine database because the government did not introduce expert testimony explaining their provenance or implications. Royle has already raised this argument and the court has already rejected it, concluding that a reasonable juror could draw inferences from those entries even absent explanatory expert testimony. See Royle, 2020 WL 2617133 at *9. A motion for reconsideration is not a "promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006). The court accordingly declines to revisit that argument here.

Royle then argues that relying on the Mail entries for such a purpose necessarily leads to a series of logical absurdities. Royle had all of the information underlying these arguments available to him at the end of the prosecution's case-in-chief, and could have raised them in his original motion or his post-trial memorandum. "Motions for reconsideration are not to be used . . . to allow a party to advance arguments that could and should have been presented to the district court prior to judgment." Allen, 573 F.3d at 52 (internal quotations omitted, alteration in original). But the court addresses them here, albeit briefly, for the sake of completeness.

**Computer age**. As Royle observes, Agent Plumb testified that the MacBook was manufactured in 2011. And as Royle also observes, entries in the LSQuarantine database extend back as far as 2005. Royle argues that, because Mail entries in the LSQuarantine database extend earlier than the MacBook's own existence, a factfinder could not infer that the MacBook was used to make any of the Mail entries. Obviously, the MacBook

4

could not have been used prior to its manufacture.  But the existence of Mail entries

predating its manufacture does not mandate the conclusion that the entries <u>after</u> the

MacBook's manufacture were not made using the MacBook.  And the court's order does

not rely on any of the entries pre-dating the MacBook's manufacture.

**Number of users**.  Next, Royle argues that inferring his access from the

appearance of his name and email address in columns titled "LSQSenderName" and

"LSQSenderAddress," respectively, mandates the inference that every person whose

name or email address appears in those columns <u>also</u> accessed the MacBook.[2]  This

extension to absurdity might make sense if the evidence were taken alone, as Royle

proposes it ought to be.  But this piece of evidence does not exist in a vacuum.  Other

evidence on the MacBook—including LSQuarantine entries from the Safari browser

related to his law firm and his own confession to Agent Fife that he used Citrix on the

MacBook to access his work files—supports the inference that he used the MacBook,

such that his name appearing in the "LSQSenderName" field suggests his <u>further</u> use of

the MacBook.  There is, however, no evidence connecting most[3] of the other names or

email addresses to the MacBook in any way at all, such that no rational juror could

conclude from these entries that <u>hundreds</u> of people used the MacBook found in Royle's

home to send email.

---

[2] Mot. to Reconsider at 5–6.

[3] As discussed <u>infra</u>, and in the court's prior order, there is evidence to support the inference that
Hardcastle used the MacBook.  <u>Royle</u>, 2020 WL 2617133 at *11.  But as the court has also
explained, that evidence does not require judgment of acquittal under <u>Pothier</u>.  <u>Id.</u>

**Sending inference**.  Agent Plumb testified that the LSQuarantine database's Safari entries reflected "any file that's downloaded from the Internet from an unknown source to Apple, or a source that's not sanctioned by them . . . ."[4]  This, Royle argues, "made it impossible for the jury to infer . . . that 'Mail' entries in LSQuarantine reflected instances of Defendant using the computer to <u>send</u> work or personal emails via the 'Mail' application," because "computers do not 'download' emails <u>sent</u> from their own email software, and they do not flag those emails as originating from 'unknown' or 'non-sanctioned' sources."[5]

Even were that the case, the court did not draw the inference that Royle necessarily <u>sent</u> emails corresponding to the entries reflected in the LSQuarantine database.  It concluded, instead, that the entries could allow a rational juror to conclude that Royle used the laptop to <u>access</u> his email.  And it concluded this not based on these entries in vacuum, but in connection with other evidence, including evidence of his use of a private Gmail account as well as his work email account, his concession to Agent Fife that he used the laptop, and files suggesting his use of the laptop appearing in its Documents folder.  <u>See</u> Royle, 2020 WL 2617133 at *9.

**Citrix inference**.  Next, Royle argues that he did not use the MacBook to send emails associated with his law firm email address because he did not <u>also</u> access Citrix at

---

[4] Plumb Tr. (doc. no. 132) at 265.

[5] Mot. to Reconsider at 6-7.

the same time those emails were sent or accessed.[6]  Royle did admit to Agent Fife that he used the MacBook "to remote access . . . his office files."[7]  But he did not tell Agent Fife that he used the MacBook to access only his office files via Citrix, or that he conducted business solely via Citrix.  A reasonable juror may readily infer from his admission that he used the MacBook to conduct business and from the appearance of his work email address on the LSQuarantine database that he also used the MacBook to access his work-related emails.  That is simply not the "absurd" inference that Royle suggests.

**Duplications**.  Royle then points to a series of duplicate entries which, he argues, makes the Mail entries "patently unreliable as an indicator of the frequency of someone's use."[8]  While Royle may be correct that "no juror could rationally conclude, for example, that Defendant sent 582 emails in the span of 31 minutes on August 11, 2013,"[9] a rational juror could conclude that Royle accessed his email on August 11, 2013 in a manner that gave rise to the LSQuarantine entries.  As explained supra, the jury need not have concluded that Royle actively sent emails at those specific times; only that he accessed the MacBook at or around the time of those entries.  And as the court explained in its order, a rational juror could do so based on the LSQuarantine database entries in

---

[6] Mot. to Reconsider at 7.

[7] Fife Tr. (doc. no. 129) at 10.

[8] Mot. to Reconsider at 7-8.

[9] See id. at 8; Ex. B at 111-21.

connection with the other evidence suggesting Royle's use of the MacBook.  See Royle, 2020 WL 2617133 at *9-10.

**Actual emails**.  Finally, Royle argues that a rational juror could not have inferred Royle's access to the MacBook from the Mail entries in the LSQuarantine database absent government evidence concerning actual emails.[10]  The absence of such evidence, he suggests, required jurors to conclude that there were no such emails.  But he offers no authority that necessitates such a conclusion.  And as the court has thoroughly explained, a rational juror could draw reasonable inferences about Royle's access to the laptop from the Mail-related entries in the LSQuarantine database coupled with other evidence concerning Royle's general access to and use of the MacBook.

In short, and as explained in the court's prior order, the jury reasonably could have inferred Royle's use of the laptop during the relevant timeframes from the Mail entries in the LSQuarantine database.  Royle's arguments to the contrary do not warrant reconsideration of the court's denial of his Rule 29 motion.

## 2.    Other users

Royle also argues that the court committed factual errors related to use of the MacBook by Royle's former wife, Anne Hardcastle, and by ignoring evidence of use by "unidentified users."  Neither of these arguments warrants reconsideration.

**Hardcastle**.  Royle contends that the court erred factually on two fronts in addressing evidence of Hardcastle's access to the MacBook.  Royle first argues that

---

[10] Mot. to Reconsider at 8.

entries in the LSQuarantine relating to Hardcastle and those relating to Royle are "substantively indistinguishable," such that "[i]t would have taken impermissible 'guesswork' by the jury to differentiate them."[11]  But these entries are not indistinguishable.  The LSQuarantine database shows instances of Mail entries associated with Hardcastle on 11 days between January 2012 and May 2014.[12]  Most of these occurred in 2012, with entries related to Hardcastle appearing on only one date in late 2013 and four in early 2014.  There are, on the other hand, hundreds—if not thousands— of Mail entries associated with Royle's personal and work-related email addresses between December 2011 and May 2014.  See Royle, 2020 WL 2617133, *9 & n.72 (citing entries).  Even assuming that the Hardcastle-related entries were instances of Hardcastle accessing the MacBook, they are heavily outweighed by the same evidence demonstrating Royle's much more frequent access.

Royle then contends that the court committed "manifest error" when it "cite[d] the purported absence of" a correlation between Hardcastle's apparent use of the MacBook and access to illicit materials.  To support a correlation, which he claims "absolutely does exist," he points to three instances in which the evidence suggests Hardcastle accessed email using the MacBook with allegedly-correlating instances of access to illicit material.  On one of those occasions, Hardcastle accessed a web-based email account on

---

[11] Mot. for Reconsideration at 6.

[12] See Ex. B at 340, 45-46, 55-56, 61, 72, 129, 138, 152, 154-56.  As Royle has observed, evidence demonstrates that the MacBook was manufactured "no earlier than late 2011."  Mot. to Reconsider at 5; Gov't Ex. 5.  The seven entries pre-dating "late 2011" warrant no consideration.

November 9, 2013, around 2:09 p.m.  Someone then searched for or downloaded the aMule file-sharing software some 12 hours later, around 2:30 a.m. the next morning, and again over a day later, at 7:40 p.m. the following evening.  In the other two instances, more than 24 hours passed between evidence of Hardcastle's use of the MacBook and access to illicit material.  Such activity 12 to 36 hours after Hardcastle accessed the laptop does not create the same level of correlation as, for example, Royle's access to his work email within minutes or hours—on the same day—as access to the illicit material. See Royle, 2020 WL 2617133.  And, as the court has explained, there is ample evidence supporting the inference that Royle, not Hardcastle, used the MacBook to access those images, including the facts that (1) the MacBook was found in Royle's residence and, according to Agent Fife, Royle appeared to be the only adult living there when it was found;[13] (2)  Royle had to call Hardcastle to come pick up the children, raising the inference that she did not live in the home;[14] and (3) the MacBook was used to search for the same type of child pornography featuring young teenage girls consistently over periods without demonstrable access by Hardcastle.

**Unidentified user**.  Finally, Royle contends that the court "manifestly erred in failing to account" for one instance in the LSQuarantine log "relating to an unidentified user logged into [a] web-based email client," which also "correlate[s] with questionable

---

[13] Fife Tr. at 10.

[14] Id. at 21.

activity on the computer."[15]  This unidentified user logged into that web-based email

client at 10:32 a.m.  The next entry in the LSQuarantine database comes over 12 hours

later, at 11:41 p.m.  As with Hardcastle, that amount of time between access and potential

illicit use, given the single entry related to this allegedly unidentified user, renders it far

less likely that this user—rather than Royle—accessed the illicit material.  In any event,

Royle never offered any argument, either at trial or in his post-trial briefing, based on that

single entry.  Nor does he expand on that alleged correlation here.  Even if he had, the

court rejected Royle's efforts to undermine the evidence with references to "unknown" or

"unidentified" users of the MacBook.  See Royle, 2020 WL 2617133 at *12.  The same

reasoning applies here.

### 3.    Clarifications

Finally, Royle argues that the court erred as a matter of fact by relying in two

instances on evidence that, Royle claims, "simply does not exist."[16]  Though the court is

satisfied that it did not rely on nonexistent evidence, Royle does highlight two instances

of imprecision on the court's part, which it resolves here.

First, Royle argues that the court relied on evidence "that simply does not exist" in

concluding that he accessed the MacBook on a consistent basis.[17]  In its order, the court

explained that, "[a]s both the LSQuarantine and Firefox browsing history show, someone

---

[15] Mot. for Reconsideration at 10 (citing Ex. B at 85–86).

[16] Mot. for Reconsideration at 3–4.

[17] Mot. for Reconsideration at 3.

used the MacBook to search for and download file-sharing software on several occasions between March 2013 and April 2015—the same period during which Royle consistently used the MacBook to access his personal and work email accounts." Royle, 2020 WL 2617133 at *10.  Royle contends that this sentence suggests reliance on nonexistent evidence because there is no evidence of any email activity (whether web-based or via the Mail program) after mid-2014.[18]  Royle is correct in that statement of the evidence. But he does not dispute that the evidence—including both the LSQuarantine database and the Firefox browsing history—demonstrates that someone used the MacBook to download file-sharing software between March 2013 and April 2015.  See Royle, 2020 WL 2617133 at *6.  This period overlaps with the period between 2011 and 2014 during which there are email-related entries in the LSQuarantine database from which a rational juror could conclude that Royle used the laptop.  Other evidence supports his use of the laptop in 2015, including, for example, the fact that it was found in his house in 2015, the fact that he was the only adult apparently living in the house, his acknowledgement that he used it to access his work-related files, and a Citrix-related download on May 15, 2015.[19]  Thus, though the court may have been imprecise in its statement, that statement neither relies on "nonexistent evidence" nor warrants reconsideration.

In a similar vein, Royle argues that the court erred in stating that "[e]ntries in the LSQuarantine database show activity relating to Royle's law firm between January 2012

---

[18] Mot. to Reconsider at 3.

[19] Ex. B at 159.

and August 2012," Royle, 2020 WL 2617133, at *9, observing that there was no evidence that Royle accessed his work files via Citrix after April 2012.  This argument generally relies on the court rejecting the Mail entries in the LSQuarantine database, however, which—as explained supra—it has not.  Such entries in the LSQuarantine database include "George Royle V" as the sender, with a sender address related to Royle's law firm, in May, July, and August 2012.[20]  And, as explained above, there is Citrix-related evidence as late as May 2015.  There is, therefore, evidence of access to the MacBook related to Royle's law firm during that time period.

## B.    Alleged errors of law

Royle next argues that the court erred as a matter of law in its interpretation and application of Pothier to Royle's motion for judgment of acquittal.  Specifically, he contends that the court erred by: (1) stating that the evidence in Pothier showed that "at least one other known individual used" the laptop at issue in that case, when it did not; (2) concluding, contrary to Royle's reading of Pothier, that a rational juror could infer use of the MacBook to access contraband from evidence of consistent access to the laptop generally; and (3) mischaracterizing Pothier's holding.

The second and third of these arguments amount to nothing more than the defendant's disagreement with the court's interpretation of Pothier, which does not constitute grounds for reconsideration.  Pothier turned, ultimately, on the possibility that

---

[20] See Ex. B at 50, 56, 61.  Such entries further appear sporadically through April 2014.  See id. at 66–67, 71, 75, 85, 92-93, 98–100, 109, 110, 121–22, 135, 137, 140, 142, 145–46.

other individuals—about which there was little or no evidence in the record—could have used the laptop in that case to download the illegal material and the lack of any evidence in the prosecution's case from which a rational juror could conclude, without guesswork, that Pothier—rather than one of those other individuals—used it to do so.  919 F.3d at 146-47.  In this case, there is evidence from which a rational jury could conclude that both Royle and another user—Hardcastle—actually used the MacBook.  See Royle, 2020 WL 2617133 at *11.  But there is also sufficient evidence introduced during the prosecution's case-in-chief from which a rational juror could conclude, without engaging in guesswork, that it was Royle, not Hardcastle or any other potential user, who used the MacBook to access the illicit material.  See id. at *8-12.

As to his first argument, Royle is correct that the evidence in Pothier was more nuanced than the court acknowledged in that specific sentence of its order. Acknowledging similarities between Royle's case and Pothier, the court stated: "And, like Pothier, there is evidence . . . that at least one other known individual used the MacBook."  Royle, 2020 WL 2617133 at *8.  By this, the court meant that, in Royle's case, there was evidence of at least one other person's actual use of the MacBook— specifically, that of Anne Hardcastle—much like in Pothier, where there was evidence of other individuals' physical access to and potential to use the laptop in question.  Pothier, 919 F.3d at 147-48.  In making this observation, the court in fact acknowledged that Royle's case was stronger than the facts in Pothier on this particular point.  But even with that acknowledgement, the court proceeded to explain that the prosecution's evidence sufficed both to connect Royle to the MacBook and to allow a rational jury to infer that

14

Royle, rather than any other potential user, used the MacBook to access the illicit materials without engaging in the guesswork prohibited by Pothier.  Royle, 2020 WL 2617133 at *8-10.  This argument accordingly does not warrant reconsideration of the court's order denying Royle's motion for judgment of acquittal.

### C.      Royle's "prefetching" argument

"[A] motion for reconsideration should be granted if the court 'has patently misunderstood a party . . . or has made an error not of reasoning but apprehension.'" Ruiz Rivera, 521 F.3d at 82.  On this basis, Royle argues that the court should reconsider its denial of his motion for judgment of acquittal because the court misapprehended "his argument regarding automatic processes on the computer, such as 'prefetching' . . . ."[21] That argument, he now explains, is that "automatic processes themselves represent another potential 'user' [under Pothier] (albeit, an automated, computerized one) who is plausibly responsible for the presence in the unallocated space of the computer of the specific contraband images on which government based its case."[22]

The court did not misapprehend this argument.  It addressed Royle's argument concerning automated processes as a challenge to the knowledge element of the crime rather than as a Pothier-based argument, see Royle, 2020 WL 2617133 at *13, and did so because Royle failed to clearly outline it as a Pothier-based argument in his oral Rule 29 motion, his closing argument, or his memoranda on that motion.  In hindsight and with

---

[21] Mot. for Reconsideration at 13.

[22] Id.

the benefit of Royle's new elaboration on the point, the court acknowledges that Royle did in fact raise this argument in a single sentence during his oral presentation and alluded to it in his opening memorandum.[23]  But this acknowledgment on the court's part does not change the result.

Even had the court understood Royle as arguing that the computer's automated processes constituted another potential "user" under Pothier, a rational juror would not have had to engage in guesswork to conclude that it was Royle, not automated processes, that accessed the illicit materials on the MacBook, largely for the same reasons that undercut Royle's knowledge-based argument.  See Royle, 2020 WL 2617133 at *13. Specifically, Agent Plumb unequivocally testified that the automated processes invoked by Royle with respect to the Firefox browser history—"prefetching" and "caching"—do not apply to file-sharing software, such as aMule.  And a rational juror could infer from the evidence in the prosecution's case-in-chief that the same type of illicit material was downloaded using file-sharing software as was searched for and accessed using the Firefox browser: specifically, images of young teenage girls engaging in sexual activity. This consistency across platforms, one of which was not subject to those automated processes, allows a rational juror to conclude—without resorting to guesswork—that Royle, rather than the automated processes, searched for and downloaded illicit images through the Firefox browser.  Because this argument would not merit judgment of

---

[23] See Royle Mem. (doc. no. 134) at 30–31.

acquittal even had the court distilled it from Royle's memoranda, it does not warrant reconsideration of that order now.

## III.  <u>Conclusion</u>

Because Royle has not raised any error of fact or law, or clarified any misapprehended argument that would warrant judgment of acquittal, his motion for reconsideration[24] of the court's denial of his Rule 29 motion is, likewise, DENIED.

**SO ORDERED.**

Joseph N. Laplante
United States District Judge

Dated:  September 2, 2020

cc:     Walter F. McKee, Esq.
        Craig M. Wolff, AUSA

---

[24] Doc. no. 163.