**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:18-cr-00165-JNL |
| | ) | |
| GEORGE ROYLE V | ) | |
| | ) | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its counsel, Halsey B. Frank, United States Attorney for the District of Maine, and Craig M. Wolff, Assistant United States Attorney, respectfully submits the following memorandum in aid of sentencing in this matter.

### INTRODUCTION

Investigators executed a search warrant at Royle's Portland home in July 2015. They found evidence that he had been seeking out child pornography images via the web and peer-to-peer networks. After being indicted, Royle elected to take the case to trial, which was his right. However, he then chose to testify falsely at trial. He is now before the Court for sentencing after a jury rejected his testimony and found him guilty. The government submits that the sentence the Court imposes must take into account his failed attempt to subvert justice by committing perjury. For the reasons stated below, the government respectfully submits that a sentence of imprisonment for 57 months followed by supervised release for 10 years is appropriate.

## GOVERNMENT'S POSITION

Royle faces a statutory maximum sentence of 10 years imprisonment. PSR ¶ 51. The Court may impose a supervised release term of between five years and life. PSR ¶ 54. A fine of up to $250,000 may be imposed, and a $100 special assessment is mandatory. PSR ¶¶ 58, 59. In addition, if the Court finds him to be non-indigent, the Court must impose an additional $5,000 special assessment. PSR ¶ 59. Restitution is mandatory, but no restitution requests have been received.

## I.      Royle's Advisory Sentencing Guidelines Are Properly Calculated

The revised PSR calculates Royle's guidelines in the following way:

| | | |
|---|---|---|
| Base offense level | 18 | § 2G2.2(a)(1) |
| Prepubescent minors | +2 | § 2G2.2(b)(2) |
| Use of computer | +2 | § 2G2.2(b)(6) |
| 600+ images | +5 | § 2G2.2(b)(7)(D) |
| Obstruction of justice | +2 | § 3C1.1 |
| **Total Offense Level** | **29** | |

PSR ¶¶ 16–26. The government believes that all of the guideline enhancements correctly apply. At Criminal History Category I, his advisory guidelines range is 87–108 months. PSR ¶ 52.

### A.      Royle is Responsible for 600 or More Images

Royle's objection to the five-level enhancement for the number of images is meritless. It is irrelevant to the guideline calculation that the government presented

only a small number of child pornography images at trial.[1] What matters is the number of images that Royle accessed or possessed during the course of his offense conduct. The images and other information found on his computer demonstrated that the offense involved 600 or more images. In light of his objection, the government will provide the Court with copies of the images supporting this enhancement prior to the sentencing hearing.

### B. Royle Attempted to Obstruct Justice by Testifying Falsely

The Court should find that Royle is subject to an enhancement for obstruction of justice under § 3C1.1 because he perjured himself at trial. Section 3C1.1 provides for a two-level offense level increase if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. Not surprisingly, committing perjury is an example of the type of conduct to which the obstruction enhancement applies. *See* U.S.S.G. § 3C1.1 cmt. n.4(B). It is also of great relevance to a sentencing court's decision regarding the extent of punishment for a defendant, because the commission of perjury "reflects on a defendant's criminal history, on her willingness to accept the commands of the law and the authority of the court, and on her character in general." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).

---

[1] It is also misleading to focus simply on the number of exhibits the government introduced at trial. Although the government introduced 17 such exhibits, each of the exhibits consisted of a "gallery" consisting of several explicit images of the same victim. Each explicit image in a gallery properly counts toward the total number of images for which Royle is accountable under the guidelines.

The First Circuit recently addressed the requirements for applying the

obstruction enhancement to trial perjury in *United States v. Mendoza-Maisonet*, 962

F.3d 1 (1st Cir. 2020). The court noted as an initial matter that "the enhancement does

not punish a defendant for exercising his constitutional right to testify; it punishes him

only if he 'commits perjury in the process.'" *Id.* at 21 (quoting *United States v.*

*Nagell*, 911 F.3d 23, 29–30 (1st Cir. 2018)).

A sentencing court should not apply the enhancement mechanically "merely

because an evidentiary conflict exists or because the jury rejects the defendant's

explanation of the facts and finds him guilty." *United States v. Gobbi*, 471 F.3d 302,

314 (1st Cir. 2006). Rather, the sentencing court must make factual findings that

encompass all the elements of perjury—falsity, materiality, and willfulness. *Mendoza-*

*Maisonet*, 962 F.3d at 21. The First Circuit summarized the showing necessary for

each of these elements:

> In making a finding of falsity, the court is not limited to directly
> contradictory testimony; it may also rely on "a solid foundation of
> circumstantial evidence." *Nagell*, 911 F.3d at 30 (quoting *United States*
> *v. Akitoye*, 923 F.2d 221, 229 (1st Cir. 1991)). Because the sentencing
> judge below also presided over the trial, "we must allow him
> reasonable latitude for credibility assessments." *Id.* (quoting *United*
> *States v. Shinderman*, 515 F.3d 5, 19 (1st Cir. 2008)). The court must
> also find materiality, which Application Note 6 defines as "evidence,
> fact, statement, or information that, if believed, would tend to influence
> or affect the issue under determination." U.S.S.G. § 3C1.1 cmt. n.6.
> "The materiality of a false statement is inferable from the entirety of
> the record and the issues at stake at trial." *Nagell*, 911 F.3d at 30.
> Lastly, the third factual predicate -- willfulness -- can be inferred from
> sufficient materiality. *Id.*

*Mendoza-Maisonet*, 962 F.3d at 21.

Here, Royle's false trial testimony met all of the elements of perjury. His

testimony included the following claims:

- Although he acknowledged that he searched for "teen" pornography, he claimed that he did not ever purposefully obtain child pornography;

- He claimed that on multiple occasions, he went to adult pornography sites and clicked on links that he thought were for adult pornography, but found that it was actually child pornography. He claimed that he stopped visiting the sites where the images were located. He also asserted that he encountered child pornography pop-up ads on adult pornography sites;

- He acknowledged using aMule to search for adult pornography, but claimed that sometimes he inadvertently received child pornography mixed in with his search results. He claimed he deleted downloaded child pornography immediately, and professed not to know why it appeared in his aMule Downloads folder. He also claimed that aMule started acting strangely shortly before the search warrant, and started providing inappropriate content in response to his search queries. He claimed he deleted aMule as a result.

This testimony was demonstrably false in light of the other evidence

introduced at trial. Most importantly, it was contradicted by the forensic information

found on his computer and Special Agent Plumb's explanation of that information.

For example, contrary to his assertion that he had stopped visiting internet sites where

he had inadvertently encountered child pornography, internet history information

showed that his visits to sites containing "naked jailbait videos" continued until less

than 36 hours before investigators arrived at his house on the morning of July 14,

2015:

| Last Visited Date/Time - UTC+00:00 (M/d/yyyy) | Title |
|---|---|
| 7/13/2015 3:47:00 AM | DepFile — secure cloud storage |
| 7/13/2015 3:47:08 AM | 3095-Gaticasexy.flv_thumbs__2015.07.03_12.20.32_.jpg - ImageTwist |
| 7/13/2015 3:47:29 AM | |
| 7/13/2015 3:47:29 AM | DEFINITIVE WEBCAMS COLLECTION- SEEN AND UNSEEN VIDS : Naked Jailbait Videos - Young stickam girls - Page 59 |
| 7/13/2015 3:48:47 AM | DEFINITIVE WEBCAMS COLLECTION- SEEN AND UNSEEN VIDS : Naked Jailbait Videos - Young stickam girls - Page 58 |
| 7/13/2015 3:48:57 AM | Kristy.mp4_snapshot_40.55__2015.06.25_11.34.46_.jpg - ImageTwist |
| 7/13/2015 3:49:09 AM | Kristy.mp4_thumbs__2015.06.25_11.34.50_.jpg - ImageTwist |
| 7/13/2015 3:49:26 AM | supermocko.avi_snapshot_09.10__2015.06.25_11.46.15_.jpg - ImageTwist |
| 7/13/2015 3:49:44 AM | ns108.mp4_snapshot_02.18__2015.07.04_17.15.22_.jpg - ImageTwist |
| 7/13/2015 3:50:48 AM | DEFINITIVE WEBCAMS COLLECTION- SEEN AND UNSEEN VIDS : Naked Jailbait Videos - Young stickam girls - Page 57 |
| 7/13/2015 3:52:29 AM | DEFINITIVE WEBCAMS COLLECTION- SEEN AND UNSEEN VIDS : Naked Jailbait Videos - Young stickam girls - Page 56 |
| 7/13/2015 3:53:06 AM | Oxbill complete collection of stickam videos : Naked Jailbait Videos - Young stickam girls - Page 23 |
| 7/13/2015 3:53:13 AM | Oxbill complete collection of stickam videos : Naked Jailbait Videos - Young stickam girls - Page 22 |

Gov't Ex. 11 at 34. In addition, notwithstanding his claim that he had deleted the peer-to-peer file-sharing program aMule when it started providing inappropriate content, the same internet history information shows not only that he was browsing for aMule less than a week before the search warrant, but also that he was visiting the same inappropriate teen cam sites both before and after his aMule-related browsing:

| | |
|---|---|
| 7/9/2015 11:28:40 PM | Only young on webcam |
| 7/9/2015 11:28:59 PM | ImageBam |
| 7/9/2015 11:29:27 PM | LD_1_04.14.wmv.jpg - ImageTwist |
| 7/9/2015 11:29:54 PM | LD_3_04.14.wmv.jpg - ImageTwist |
| 7/9/2015 11:30:05 PM | LD_4_04.14.wmv.jpg - ImageTwist |
| 7/9/2015 11:30:25 PM | LD_5_04.14.wmv.jpg - ImageTwist |
| 7/9/2015 11:30:38 PM | LD_6_04.14.wmv.jpg - ImageTwist |
| 7/9/2015 11:30:56 PM | LD_2_04.14.wmv.jpg - ImageTwist |
| 7/9/2015 11:31:08 PM | LD_3_04.14.wmv.jpg - ImageTwist |
| 7/9/2015 11:31:30 PM | LD_4_04.14.wmv.jpg - ImageTwist |
| 7/9/2015 11:31:37 PM | |
| 7/9/2015 11:31:38 PM | DepFile — secure cloud storage |
| 7/10/2015 12:44:25 AM | DuckDuckGo |
| 7/10/2015 12:44:25 AM | |
| 7/10/2015 12:44:31 AM | amule for mac at DuckDuckGo |
| 7/10/2015 12:44:36 AM | aMule for Mac - Free download and software reviews - CNET Download.com |
| 7/10/2015 12:44:38 AM | |
| 7/10/2015 12:44:39 AM | |
| 7/13/2015 3:11:35 AM | web_cute_019_234__image_4_.jpg - ImageTwist |
| 7/13/2015 3:11:48 AM | web_cute_019_237__image_1_.jpg - ImageTwist |
| 7/13/2015 3:11:59 AM | My stickam and Stickam Videos Collection : Naked Jailbait Videos - Young stickam girls - Page 292 |
| 7/13/2015 3:12:20 AM | web_cute_019_225__image_7_.jpg - ImageTwist |
| 7/13/2015 3:12:26 AM | web_cute_019_225__image_1_.jpg - ImageTwist |
| 7/13/2015 3:12:31 AM | web_cute_019_225__image_2_.jpg - ImageTwist |
| 7/13/2015 3:12:35 AM | web_cute_019_225__image_4_.jpg - ImageTwist |
| 7/13/2015 3:12:40 AM | web_cute_019_225__image_5_.jpg - ImageTwist |
| 7/13/2015 3:12:44 AM | web_cute_019_225__image_8_.jpg - ImageTwist |
| 7/13/2015 3:13:00 AM | Teen Cam Girls : Naked Jailbait Videos - Young stickam girls - Page 83 |
| 7/13/2015 3:13:17 AM | katie_07373-2-1.jpg - ImageTwist |
| 7/13/2015 3:13:28 AM | Teen Cam Girls : Naked Jailbait Videos - Young stickam girls - Page 82 |
| 7/13/2015 3:13:38 AM | ot275-3.jpg - ImageTwist |
| 7/13/2015 3:13:47 AM | Teen Cam Girls : Naked Jailbait Videos - Young stickam girls - Page 81 |

Gov't Ex. 11 at 30.

Royle's claims regarding his use of aMule also did not square with the evidence found on his computer. Government Exhibit 15, which listed selected QuickLook Thumbnail Cache entries, showed that the aMule Downloads folder on his computer was full of video files indicative of child pornography, much of it focused on the same theme of teen and pre-teen girls on webcam sites. These hundreds of entries undermined both Royle's assertion that he only searched for adult pornography using the program, and his claim that he immediately deleted any child

pornography that happened to be swept up inadvertently during his indiscriminate searches for pornography.

More generally, the sum of the evidence at trial, described more fully in the government's response to Royle's Rule 29 motion, directly contradicted his testimony and showed that he was purposefully seeking out child pornography over an extended period.[2] This evidence provided the "solid foundation of circumstantial evidence" necessary to demonstrate the falsity of his testimony.

The trial testimony was also material. His attempts to explain away the child pornography images found on his computer went to the heart of the case against him: whether he *knowingly* accessed with intent to view material that contained images of child pornography. There is no question that had the jury believed his testimony, it would have affected the case's outcome.

Finally, Royle provided the false testimony willfully. As noted above, willfulness can be inferred from sufficient materiality, and such an inference is appropriate here. Given the variety of falsehoods that he provided in his testimony, and the importance of the subject matter, he cannot credibly argue that his testimony

---

[2] Aspects of Royle's testimony also simply do not square with common sense. It is difficult to believe, for example, that a legal adult pornography site would contain links to illegal child pornography, or that such an adult site would permit pop-up ads displaying child pornography. Royle's unsupported assertion that aMule started acting strangely and providing inappropriate content also does not square with the fact that an aMule user must affirmatively choose the files that are downloaded to the user's computer, after reviewing the names of the files. Finally, it appears highly unlikely that child pornography encountered accidentally as a result of pop-up ads and malfunctioning peer-to-peer programs would consistently conform to the theme of teen and pre-teen girls engaging in sexually explicit conduct on cam sites.

was the product of "confusion, mistake, or faulty memory." *Dunnigan*, 507 U.S. at 94.

Royle's trial testimony was demonstrably false, material to the jury's decision-making and willfully given. The Court should therefore impose the obstruction enhancement under § 3C1.1.

## II.  A Sentence of 57 Months Imprisonment Is Appropriate

The government recommends a sentence of imprisonment for 57 months followed by 10 years of supervised release. This sentence is below the advisory guidelines range of 87–108 months, but the government submits that it is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing set forth in 18 U.S.C. § 3553(a).

The evidence at trial showed that Royle had searched for and downloaded child pornography over an extended period. Forensic artifacts obtained from activity on his computer showed that as early as August 2012, he accessed video files with titles indicative of child pornography content. More specifically, many of the files referenced teen and pre-teen girls engaging in sexually explicit behavior on so-called "cam" sites such as Omegle and Stickam. This would prove to be the consistent theme of Royle's searches for images and videos, which also included the use of peer-to-peer file-sharing software. His illegal conduct continued until investigators arrived at his home in July 2015.

A sentence of 57 months imprisonment is equivalent to the low end of the range at offense level 25. Under the rubric of the guidelines, this accounts for the base offense level (18), the number of images involved in the offense (+5) and Royle's

attempt to obstruct justice (+2). It also reflects the lengthy period of time during

which Royle searched for this illegal content. At the same time, it acknowledges that

the other two enhancements applicable to Royle's conduct—for the use of a computer

and the presence of images of prepubescent minors—are present in almost all child

pornography cases and therefore arguably do not serve to differentiate offenders.[3]

The government believes that a sentence that is at the equivalent of an offense level

25 therefore captures the most salient aspects of Royle's offense conduct, while

addressing any potential shortcomings of the child pornography guidelines.

### III.  The Government's Recommended Sentence Fulfills the Statutory Purposes of Sentencing

The government submits that its recommended sentence is also appropriate

under 18 U.S.C. § 3553(a). In addition to the nature and circumstances of the offense,

discussed above, the other statutory factors also support the imposition of this

sentence.

### A.  Royle's History and Characteristics

With respect to Royle's history and characteristics, he reported having a

"relatively typical" childhood, albeit with some social struggles. PSR ¶ 34. He

excelled academically and became a successful attorney. PSR ¶¶ 44, 47, 48.

---

[3] In fiscal year 2019, 94.3% of all cases sentenced using § 2G2.2 included the enhancement for prepubescent minors or minors under the age of 12. During the same year, 95.8% of all cases included the enhancement for use of a computer. *See* U.S. Sentencing Commission, Use of Guidelines and Specific Offense Characteristics, Guideline Calculation Based, Fiscal Year 2019 at 44–45, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2019/Use_of_SOC_Guideline_Based.pdf.

Royle reports that his compulsive use of pornography has been an issue for him his entire adult life. Following the execution of the search warrant at his residence in 2015, he sought treatment for this compulsive behavior. PSR ¶ 41. As part of a psychosexual evaluation, the evaluator opined that Royle posed a very low risk of re-offending, and did not pose a risk to the community. PSR ¶ 41.[4] Royle continues to attend meetings of a 12-step program. PSR ¶ 42. He has also created a website designed to assist individuals with pornography compulsion. PSR ¶ 42. Taken together, these facts suggest that a below-guideline sentence is appropriate, although it appears his risk of re-offending likely depends on whether he continues treatment for his compulsive behavior.

### B. Seriousness of Offense, Respect for the Law, Just Punishment

The Court also must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A). These factors are related. As the court noted in *United States v. Stern*, 590 F. Supp. 2d 945 (N.D. Ohio 2008), "There is no reason to believe that respect for the law will increase if a defendant who deserves leniency is sentenced harshly any more than there is reason to believe that respect for the law will increase if a defendant who deserves a harsh punishment receives a slap on the wrist." *Id.* at 957. In this case, Royle's offense was quite

---

[4] It merits mentioning that the description in Paragraph 41 of Royle's viewing of illicit material is hard to square with his trial testimony.

serious, and calls for a significant period of incarceration. At the same time, the government does not believe that a guideline sentence is warranted here.

### C. General and Specific Deterrence

The Court also must consider the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2)(B), (C). These two factors are sometimes said to reflect the needs for general and specific deterrence. *See, e.g.*, *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). With respect to the former, the government believes that it is always important to send the message that child pornography offenders will be punished severely.

With respect to the latter, it appears unlikely that Royle will offend again as long as he continues with treatment. A supervised release term of 10 years will ensure that he continues to take steps to minimize the risk that he will commit similar crimes in the future.

### D. Training and Treatment

The Court must also consider the need for the sentence imposed to provide Royle with needed training or treatment. *See* 18 U.S.C. § 3553(a)(2)(D). The government's recommended sentence will provide him with the opportunity to obtain needed mental health and sex offender treatment, as recommended in the PSR.

### E. Sentencing Disparities

Finally, the Court must also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of

similar conduct. *See* 18 U.S.C. § 3553(a)(6). In *Gall v. United States*, 552 U.S. 38

(2007), the Supreme Court concluded that when a sentencing judge correctly

calculates and carefully reviews the Guidelines range, he or she necessarily gives

significant weight and consideration to the need to avoid unwarranted disparities. *See*

*id.* at 54. The government submits that the below-guideline sentence it recommends

adequately addresses this factor.

## CONCLUSION

Prior to being charged in this case, Royle took steps to address the compulsive

behavior that may have contributed to his offense conduct. His pre-charge behavior

gave every indication that he had accepted responsibility for his actions. However, his

decision to testify falsely at trial negated whatever steps he had taken prior to being

charged. His offense conduct and his attempt to subvert justice merit a substantial

sentence. For the reasons stated above, the government recommends that the Court

impose a sentence of 57 months imprisonment followed by supervised release for 10

years.

Respectfully submitted,

HALSEY B. FRANK
UNITED STATES ATTORNEY


By:    /s/ Craig M. Wolff
Craig M. Wolff
Assistant United States Attorney


Dated: September 29, 2020

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2020, I electronically filed the above

**Government's Sentencing Memorandum** with the Clerk of Court using the

CM/ECF system, which will send notification of such filing to the following:

**Walter F. McKee, Esq.**
**wmckee@mckeelawmaine.com**

HALSEY B. FRANK
UNITED STATES ATTORNEY


   /s/ Craig M. Wolff
Assistant United States Attorney
United States Attorney's Office
100 Middle Street
Portland, Maine 04101
(207) 780-3257
craig.wolff@usdoj.gov